NEW-YORK PRACTICE REPORTS. 509

Lewin, survivor of J. Ogden & Co., agt. Stewart & Wright

# SUPREME COURT.

ROBERT LEWIN, survivor of JONATHAN OGDEN & Co., agt. THOMAS J. STEWART and WILLIAM P. WRIGHT.

The plaintiffs, Ogden and Lewin, under the firm-name of Jonathan Ogden & Co., purchased, for shipment to Liverpool, 285 bales of cotton at eight cents per pound, making an aggregate price of $9,090.80. The defendants, who were cotton dealers as well as cotton brokers, requested, it was alleged, to be let in to the adventure; and were admitted to an equal joint interest—thus creating a particular partnership, with all the rights and liabilities, so far as that single shipment was concerned, incident to partnership transactions.

The adventure resulted in a loss of $1,758.44, which the plaintiff claimed should be borne equally by the defendants, with the plaintiff. The defendant, Wright, admitted his liability, but Stewart, the other defendant, insisted that Wright had no authority to bind the firm; and that he, Stewart, never consented to take an interest in it "otherwise than conditionally, and upon the induce ment of false representations."

On the trial of the cause before the court, upon pleadings and proofs, it was held, that the evidence, in regard to the alleged misrepresentations, was loose and unreliable, and, assuming admitted facts, no probability they were ever made.

Next, was there any agreement between Ogden & Co. on the one part, and Stewart and Wright, on the other, to share in the profit and loss of this adventure? Held, that Wright not only admitted, but on his examination as a witness testified, there was; and Stewart, in his answer, made, in effect, the same admission, with the qualification, however, that the agreement to which he assented was conditional—that is, that a sample of the proposed shipment was exhibited, which was of a quality known in the trade as "fair;" and he consented to become interested "if the cotton was equal to that sample, otherwise not." Now it was proved, and Stewart's own statement was a portion of the testimony, that that grade of cotton "was then worth, in the market, nine to nine and a half cents per pound." It was not at all probable, therefore, that Stewart could have believed that the owner of the cotton had sold Ogden & Co., (who at the same time sold to the defendants,) for eight cents a pound, a quality or grade of the article then worth, in the market, nine and a half, when, by walking to the Exchange, the latter price might have been procured.

Held, on a review of the whole evidence, that, as a matter of fact, the defendants did make the agreement alleged by the plaintiff's bill, and that no such condition was attached as was then pretended.

Stewart next insisted that the agreement, not being in writing, was void by the statute of frauds.

Lewin, survivor of J. Ogden & Co., agt. Stewart & Wright.

*First.* This objection was not set up in the answer.  A party who would avail himself of the statute of frauds, must *specially* insist upon it *in pleading:*

*Second.* The statute says, that every contract for the sale of goods for the price of $50 or more shall be void, unless there be a note or memorandum in writing, or a part delivery, or part payment.  In this case the contract was in relation to a shipment, which Ogden and Co. " were *about* to make."  It is presumed the cotton was not on board the vessel at that time, but was delivered, and received by the captain of the vessel, subsequently, as the agent of the shippers.  Who were the shippers?  The plaintiffs and defendants jointly. Consequently, the *delivery* was as much to the defendants as to the plaintiffs; and, besides, it was a delivery of the whole number of bales sold.

*Third.* But in a *contract of partnership,* whether special or general, neither *writing nor delivery,* except implied delivery, is necessary.  An undivided interest, it is true, passes from the one partner to the other; but being tenants in common, delivery to one, and possession by one, are delivery to and possession by both.  So that if the statute applies, its terms are, *ipso facto,* fulfilled.

*New-York Special Term,* 1854.

————— —————, *for plaintiff.*

————— —————, *for defendants.*

ROOSEVELT, Justice.  This suit was commenced in the late court of chancery, in August, 1844.  It was brought to trial without a jury in this court, on the pleadings and proofs.  Its object, according to the prayer of the bill, was to compel the defendants, who composed the late firm of Stewart & Wright, to bear one half of the loss of a cotton adventure to Liverpool, alleged to have been entered into on the joint account of the plaintiffs and defendants.

On the 16th of March, 1844, the late firm of Jonathan Ogden & Co., composed of Ogden and Lewin, purchased for shipment 285 bales of cotton, at eight cents per pound, making an aggregate price of $9,090.80.  The defendants, who were cotton dealers as well as cotton brokers, hearing of the intended adventure, requested, it is alleged, to be let in, and were admitted to an equal joint interest; thus creating a particular partnership, with all the rights and liabilities, so far as that single shipment was concerned, incident to partnership transactions.

The adventure, it appears, instead of a profit, resulted in a

loss of $1,758.44; the whole of which the defendants have left Messrs. Ogden & Co. to bear. One of the defendants, Wright, (who, however, is insolvent,) admitting his liability; the other, Stewart, insisting that Wright had no authority to bind the firm of Stewart & Wright in any such adventure, and that he, Stewart, never consented to take any interest in it, "otherwise than conditionally, and upon the inducement of false representations."

Without going over the evidence in detail, my conviction is now, as it was on the trial, that the testimony of the witness, Joyce, in regard to the alleged misrepresentations, is loose and unreliable; that there was no motive, in any view of the case, for making them, and, assuming admitted facts, no probability that they ever were made. Dismissing this point, then, the only question is, was there any agreement between Ogden & Co. on the one part, and Stewart & Wright on the other, to share in the profit and loss of this adventure.

Wright not only admits, but, on his examination as a witness, swears there was; and Stewart, in his answer above quoted, makes, in effect, the same admission, with this qualification, however, that the agreement to which he assented was "conditional." What, then, was this condition? A sample of the proposed shipment, he says, was exhibited, which was of a quality known in the trade as "fair;" and he consented to become interested "if the cotton was equal to that sample, otherwise not." Now cotton of that grade, taking his own statement, "was then worth, *in the market,* nine to nine and a half cents per pound;" in other words, for such is the inevitable dilemma of Stewart's account of the transaction, Ogden & Co. "*solicited*" Stewart & Wright to purchase of them between one and two hundred (the half of 285) bales of cotton "at eight cents per pound," which they had only to walk to the Exchange and sell for nine and a half! Unexplained, such an exhibition of commercial generosity, if it took place, was of itself sufficient to arouse suspicion, and stimulate inquiry. But Stewart, in his answer, does not pretend that he either entertained the one, or instituted the other; although no motive, he admits,

existed—none, at all events, is even suggested—for making, in effect, in a mere bargain and sale transaction, a present, by the one house to the other, of about nine hundred or a thousand dollars.

That Ogden & Co. paid eight cents a pound for the cotton, is not disputed; that their purchase was simultaneous with their agreement with the defendants, is also not disputed; and there is no pretence that anything had occurred to induce them to suppose that they had purchased an inferior article, the loss on which they wished, in part at least, to throw on others.

Again: Is it at all probable that Stewart could have believed that Miller, the owner of the cotton, had sold Ogden & Co., for eight cents a pound, a quality or grade of the article then worth, *in the market,* nine and a half."

The whole story, testing it by the most ordinary rules of commercial dealing, is obviously an afterthought, to which the result of the adventure, and not the adventure itself, has given birth. Had there been a profit, instead of a loss, nothing would have been heard of the alleged condition. It was the condition of things in Liverpool, and not the condition of the contract, that has led to this litigation. Falling markets, whether in real estate, or in the produce of real estate, are great breeders of litigation, opening the eyes of men to wrongs which their ordinary vision would never have discovered, and imparting to by-gone incidents a sort of retrospective coloring more in accordance with the wishes of the observer, than with the actual features of the object.

On a review of the whole evidence, including that derived from the pleadings themselves, and even without the aid of Wright's testimony, my conclusion is, as a matter of fact, that the defendants did make the agreement alleged in the plaintiff's bill, and that no such condition was attached to it as is now pretended.

The defendant, Stewart, next insists, that such agreements, unless in writing—and this was unwritten—are void by the statute of frauds, and cannot be enforced by the court.

It would be sufficient, perhaps, to say of this objection, that

it is not set up in the answer. A party who would avail himself of the statute of frauds, it is laid down, must specially insist on it in pleading, or be deemed to have waived the benefit of its provisions. (*Story*, 590; *Cooper*, 256; 2 *Paige*, 177.) Instead of doing this, the defendant merely alleges that the agreement was conditional. He joins issue, not upon its being written or not written, but upon its terms. He thereby virtually admits that, if made as set up by the plaintiffs, he is bound and is willing to abide by its consequences. Such an admission once made, even by implication, ought not, in favor of a technical defence, to be allowed to be withdrawn, especially in a case where the court is fully satisfied with the evidence.

. Had the objection, however, been distinctly taken, and relied on in the pleadings, it would not, I conceive, have been of any avail. The statute says, that every contract for the sale of goods, for the price of fifty dollars or more, shall be void, unless there be a note or memorandum in writing, or a part delivery, or part payment. Now the defendant, in his answer, says, that when the arrangement in question was entered into, the adventure was spoken of as a shipment which Ogden & Co. " were *about* to make." The cotton, therefore, we may presume, was not on board the vessel at that time, but was delivered subsequently; and when the captain, in the language of the act, "accepted and received the goods," he did so under the contract, and as the agent of the shippers. As matters then stood, the shippers were the plaintiffs and defendants jointly. The delivery consequently was as much to the defendants as to the plaintiffs; and it was a delivery, moreover, not of "part" merely, which is all the statute requires, but of the whole number of bales sold. It was a delivery recognized by all parties, and repudiated by none till long after it was made, and after the loss was known.

But, in a contract of partnership, neither writing nor delivery, except implied delivery, is necessary. It is not " a contract of sale " within the meaning of the act. (2 *Barb. Ch. R.* 336.) An undivided interest, it is true, passes from the one partner to the other; but, being tenants in common, delivery to one, and

possession by one, are delivery to, and possession by, both. In the nature of things, therefore, the statute cannot apply—or if it do apply, its terms, in every case, are, *ipso facto*, fulfilled, there being, in every case, necessarily a " delivery," or rather, an " acceptance," which is the language of the act, by force of the contract itself. And this result, it is obvious, follows as much in the case of a special as in the case of a general partnership.

A., individually, sells to A. and B. jointly, and accepts for the firm of A. and B., as the agent of both. A. is thus both vendor and vendee. Every contract of partnership, as soon as formed, implies a power of attorney, or agency, from the firm to each member, to act for and represent the whole. Now, an agency, even for the sale of real estate, may lawfully— I will not say, wisely—be created without writing. No writing, therefore, was necessary to enable Ogden & Co., or the captain of the ship, or the consignees abroad, to bind Stewart & Co. A mere parol authority, it is true, should be clearly made out—and, in this instance, I think it has been. Not a doubt rests on my mind, that Ogden & Co. were authorized to ship, and, as the invoice expressed it, did ship these " 285 bales of cotton, for sale *on account of sundries;*" that those sundries were Ogden & Co. and the defendants, in equal undivided shares; and that, being entitled, had there been any, to participate equally in the profit, the defendants are in equity bound to contribute equally to make up the loss of the adventure.

For greater clearness, I will restate my conclusions in the form of distinct and separate propositions.

1st. That Stewart & Wright did, in fact, and without any false or fraudulent inducement, agree to become jointly interterested, as partners, in the shipment in question.

2d. That such contracts of partnership, although the subject of the adventure may be over fifty dollars in value, are legally binding, whether reduced to writing or not.

3d. That, if within the statute of frauds, they are also within its exception, validating the bargain, if " the buyer shall accept and receive part of such goods."

4th. That the seller in such case, being himself also a joint buyer, his acceptance, which is a necessary incident of the contract, is the acceptance of both.

5th. That, at all events, the contract in this case having been made while the article was still in Miller's hands, his delivery of the cotton to the captain on board the Sterling, and its acceptance by the latter on behalf of the shippers, was, in legal effect, the act of all the partners, by their lawfully authorized agents, and tantamount in all respects to a "receipt and acceptance of the goods" by the principals: thus, as a necessary consequence, and by the very terms of the statute, superceding the requirement of a "note or memorandum in writing, subscribed by the parties," and rendering the contract binding upon them without that usually indispensable, and always advisable, formality.

As the plaintiffs have released the defendant, Wright, no decree can be made against him. But that release, since the act of April, 1838, does not impair the plaintiffs' remedies as against the other joint debtor, nor the right of the latter, after paying the claim, to call on the discharged partner for his rateable portion.

Judgment must, therefore, be entered for the plaintiff, against the defendant, Stewart, for the $879.22, with interest and costs.